UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARISOL GONZALEZ,

                              Plaintiff,

            v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

DECISION & ORDER

15-CV-6123P

## PRELIMINARY STATEMENT

          Plaintiff Marisol Gonzalez ("Gonzalez") brings this action pursuant to Section

205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision

of the Commissioner of Social Security (the "Commissioner") denying her applications for

Supplemental Security Income Benefits and Disability Insurance Benefits ("SSI/DIB").

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a

United States magistrate judge.[1]  (Docket # 11).

          Currently before the Court are the parties' motions for judgment on the pleadings

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket ## 9, 10).  For the

reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim

for further administrative proceedings consistent with this decision.

_____

          [1] This case was originally assigned to the Hon. Jonathan W. Feldman and was subsequently reassigned to
this Court.  (Docket ## 11, 15).

## BACKGROUND

### I.     Procedural Background

Gonzalez applied for SSI/DIB on June 18, 2012, alleging disability beginning on June 1, 2012, due to depression, asthma, and high blood pressure.  (Tr. 176, 180).[2]  On October 26, 2012, the Social Security Administration denied both of Gonzalez's claims for benefits, finding that she was not disabled.  (Tr. 73-74).  Gonzalez requested and was granted a hearing before Administrative Law Judge Julia D. Gibbs (the "ALJ").  (Tr. 110-11, 122-26).  The ALJ conducted a hearing on July 29, 2013.  (Tr. 37-72).  In a decision dated August 30, 2013, the ALJ found that Gonzalez was not disabled and was not entitled to benefits.  (Tr. 16-35).

On January 6, 2015, the Appeals Council denied Gonzalez's request for review of the ALJ's decision.  (Tr. 1-6).  Gonzalez commenced this action on March 6, 2015 seeking review of the Commissioner's decision.  (Docket # 1).

### II.     Relevant Medical Evidence[3]

Treatment records indicate that on July 24, 2012, Gonzalez was referred by her primary care physician to Unity Hospital's Evelyn Brandon Outpatient Mental Health Center for mental health treatment.  (Tr. 254).  Gonzalez initially met with Kelly L. Robinson ("Robinson"), LMHC, who diagnosed Gonzalez with depressive disorder, not otherwise specified, and anxiety disorder, not otherwise specified, and assessed a Global Assessment of Functioning ("GAF") of 50.  (Tr. 325).  Although Gonzalez met with Robinson for individual counseling every other week, Robinson's treatment notes do not appear in the record.  (Tr. 45).  Rather, the record contains only treatment notes of Prakash P. Reddy ("Reddy"), MD,

---

[2]  The administrative transcript shall be referred to as "Tr. __."

[3]  Those portions of the treatment records that are relevant to this decision are recounted herein.

Gonzalez's psychiatrist, with whom she met monthly for medication management.  (Tr. 45, 304-31).

Gonzalez first met with Reddy on September 24, 2012.  (Tr. 325-30).  She reported a history of domestic abuse that had prompted her recent relocation to the Rochester area.  (*Id.*).  According to Gonzalez, she experienced difficulty sleeping and decreased motivation, and often felt depressed, tearful, guilty, lonely, and fatigued.  (*Id.*).  She also reported panic attacks and nervousness in large group settings.  (*Id.*).  Gonzalez related a history of suicide attempts and daily thoughts of suicide, with no specific plan.  (*Id.*).  She also indicated that she sometimes heard voices calling her name.  (*Id.*).

Reddy observed that Gonzalez demonstrated paranoid ideation, impaired memory, poor concentration, and an anxious and depressed mood and affect.  (*Id.*).  He prescribed Trazadone, Zoloft, and Hydroxyzine.  (*Id.*).  Gonzalez had additional appointments with Reddy in October and November 2012 and January, May and June 2013.  (Tr. 305-24).  During those meetings, Gonzalez continued to complain of feelings of depression, mood swings, insomnia, and suicidal ideation.  (*Id.*).

On November 5, 2012, Robinson completed a form entitled Psychological Assessment for Determination of Employability relating to Gonzalez.  (Tr. 300-03).  Robinson reported that she was Gonzalez's primary therapist and had treated Gonzalez since August 2012 for biweekly psychotherapy sessions.  (*Id.*).  According to Robinson, Gonzalez had been diagnosed with depression, not otherwise specified, and anxiety disorder, not otherwise specified.  (*Id.*).  Robinson assessed Gonzalez's current GAF to be 55.  (*Id.*).

Robinson opined that Gonzalez had normal functioning in her ability to maintain basic standards of hygiene and grooming, but that she was moderately limited[4] in her ability to follow, understand, and remember simple instructions and directions, to perform simple and complex tasks independently and to regularly attend to a routine and maintain a schedule. (*Id.*). Robinson further opined that Gonzalez was very limited[5] in her ability to maintain attention and concentration for role tasks and to perform low stress and simple tasks. (*Id.*). Robinson opined that Gonzalez was able to use public transportation, but that she was unable to participate in any activities except for treatment or rehabilitation for the next six months. (*Id.*).

On May 16, 2013, Robinson completed another Psychological Assessment for Determination of Employability form relating to Gonzalez.[6] (Tr. 332-35). Again, Robinson reported that she was Gonzalez's primary therapist and that she had treated Gonzalez since August 2012 for biweekly psychotherapy sessions. (*Id.*). According to Robinson, Gonzalez continued to suffer from depression, not otherwise specified, and anxiety disorder, not otherwise specified. (*Id.*). Robinson assessed Gonzalez's current GAF to be 58. (*Id.*).

Robinson opined that Gonzalez had normal functioning in her ability to maintain basic standards of hygiene and grooming, but that she was moderately limited[7] in her ability to follow, understand, and remember simple instructions and directions, to perform simple and

---

[4] "Moderately limited" was defined to indicate that the individual was "unable to function 10-25% of the time." (*Id.*).

[5] "Very limited" was defined to indicate that the individual was "unable to function 25% or more of the time." (*Id.*).

[6] In addition to the forms completed by Robinson, the record contains several other medical opinions assessing Gonzalez's mental limitations. These include an assessment from Kavitha Finnity, PhD, who assessed moderate limitations in some areas of work-related activity and concluded that Gonzalez would be unable to participate in any activities other than treatment or rehabilitation. (Tr. 221-26). This opinion was not given great weight by the ALJ. (Tr. 28). Instead, the ALJ relied upon opinions submitted by consulting physicians Christine Ransom, PhD, and L. Blackwell, PhD. (Tr. 28, 79, 82-84, 258-61).

[7] "Moderately limited" was defined to indicate that the individual was "unable to function 10-25% of the time." (*Id.*).

complex tasks independent, to maintain attention and concentration for role tasks, to regularly

attend to a routine and maintain a schedule, and to perform low stress and simple tasks.  (*Id.*).

Again, Robinson opined that Gonzalez was able to use public transportation, but that she was

unable to participate in any activities except for treatment or rehabilitation for the next six

months.  (*Id.*).


## DISCUSSION

### I.   Standard of Review

This Court's scope of review is limited to whether the Commissioner's

determination is supported by substantial evidence in the record and whether the Commissioner

applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004)

("[i]n reviewing a final decision of the Commissioner, a district court must determine whether

the correct legal standards were applied and whether substantial evidence supports the

decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also

Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo*

whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's

conclusions are supported by substantial evidence in the record as a whole or are based on an

erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C.

§ 405(g), a district court reviewing the Commissioner's determination to deny disability benefits

is directed to accept the Commissioner's findings of fact unless they are not supported by

"substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to

any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is

defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  When assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis.  *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*).  The five steps are:

> (1)   whether the claimant is currently engaged in substantial gainful activity;
>
> (2)   if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";
>
> (3)   if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4)    if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity to perform his past work; and

(5)    if not, whether the claimant retains the residual functional capacity to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467.

"The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

A.    **<u>The ALJ's Decision</u>**

In her decision, the ALJ followed the required five-step analysis for evaluating disability claims. (Tr. 19-31). Under step one of the process, the ALJ found that Gonzalez has not engaged in substantial gainful activity since June 1, 2012, the alleged onset date. (Tr. 21). At step two, the ALJ concluded that Gonzalez has the severe impairments of chronic low back pain, history of chronic left arm pain, depression, anxiety, and asthma. (*Id.*). At step three, the ALJ determined that Gonzalez does not have an impairment (or combination of impairments) that meets or medically equals one of the listed impairments. (Tr. 22-24). With respect to Gonzalez's mental impairments, the ALJ found that Gonzalez suffers from moderate difficulties in maintaining concentration, persistence or pace, and in social functioning, and mild limitations in performing activities of daily living. (*Id.*). The ALJ concluded that Gonzalez has the Residual Functional Capacity ("RFC") to perform unskilled work at the light level of exertion that does not involve contact with the general public or more than superficial contact with coworkers and supervisors, or more than occasional overhead reaching with the left dominant arm, or excessive exposure to environmental irritants. (Tr. 24). At steps four and five, the ALJ

determined that Gonzalez was unable to perform her prior work, but that other jobs existed in the national and regional economy that Gonzalez could perform, including the positions of tag inserter, garment sorter, and labeler.  (Tr. 29-31).  Accordingly, the ALJ found that Gonzalez is not disabled.  (*Id.*).

  **B.**   **Gonzalez's Contentions**

  Gonzalez contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error.  (Docket # 9-1).  First, Gonzalez contends that the ALJ erred in evaluating her credibility.  (*Id.* at 14-18).  Next, Gonzalez maintains that the ALJ's mental RFC assessment is not based upon substantial evidence because she erred in evaluating the opinion evidence contained in the record.  (*Id.* at 18-22).

  **II.**   **Analysis**

  I turn first to Gonzalez's contention that the ALJ's mental RFC assessment was flawed because the ALJ improperly discounted Robinson's May 2013 opinion.  (*Id.*).  Specifically, the ALJ stated:

> [T]he undersigned has considered the May 2013 assessment provided for the Monroe County Department of Human Services by Kelly L. Robinson, LMHC . . . .  That assessment notes Axis I diagnoses of depression and anxiety, and a Global Assessment of Functioning (GAF) score of 58, which is not indicative of severe symptoms or problems functioning . . . .  Ms. Robinson indicated that the claimant is capable of taking public transportation . . . .  The undersigned discounts Ms. Robinson's opinion that the claimant was then currently unable to participate in any activities except treatment or rehabilitation for a period of six months . . . .  That opinion, and the functional assessment provided by Ms. Robinson is not consistent with the GAF of 58 provided in that

report, which is not indicative of severe symptoms or problems
with functioning.

(Tr. 27-28).

Gonzalez contends that the ALJ failed to provide good reasons for her decision to discount Robinson's opinion.  (Docket # 9-1 at 18-22).  Specifically, Gonzalez argues that the ALJ improperly determined that Robinson's functional assessment and her opinion that Gonzalez was unable to participate in work activities for six months were inconsistent with her assessment that Gonzalez had a GAF of 58.  (*Id.*).

An ALJ should consider "all medical opinions received regarding the claimant." *See Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R. § 404.1527(d)).  When evaluating medical opinions, regardless of their source, the ALJ should consider the following factors:

> (1)    the frequency of examination and length, nature, and extent of the treatment relationship;
>
> (2)    the evidence in support of the physician's opinion;
>
> (3)    the consistency of the opinion with the record as a whole;
>
> (4)    whether the opinion is from a specialist; and
>
> (5)    whatever other factors tend to support or contradict the opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010); *see Spielberg v. Barnhart*, 367 F. Supp. 2d at 281 ("factors are also to be considered with regard to non-treating sources, state agency consultants, and medical experts") (citing 20 C.F.R. §§ 404.1527(d) and (e)); *House v. Astrue*, 2013 WL 422058, *3 (N.D.N.Y. 2013) ("[m]edical opinions, regardless of the source are evaluated considering several factors outlined in 20 C.F.R. §§ 404.1527(c), 416.927(c)").

Licensed clinical social workers are not considered "acceptable medical sources" under the regulations.  20 C.F.R. §§ 404.1513(a), 416.913(a).  Instead, clinical social workers are considered "other sources" within the meaning of 20 C.F.R. §§ 404.1513(d) and 416.913(d).  As such, their opinions "cannot establish the existence of a medically determinable impairment." *See* SSR 06-03P, 2006 WL 2329939, *2 (2006).  Their opinions may be used, however, "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function."  *See id.*

Social Security Ruling 06-03P recognizes that "[m]edical sources . . . , such as . . . licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists."  *Id.* at *3.  The ruling recognizes that such opinions are "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  *Id.*  The ruling directs the ALJ "to use the same factors for evaluation of the opinions of acceptable medical sources to evaluate the opinions of medical sources who are not acceptable medical sources, including licensed social workers."  *Genovese v. Astrue*, 2012 WL 4960355, *14 (E.D.N.Y. 2012) (internal quotations omitted).   "An ALJ is not required to give controlling weight to a social worker's opinion; although he is not entitled to disregard it altogether, he may use his discretion to determine the appropriate weight."  *Cordero v. Astrue*, 2013 WL 3879727, *3 (S.D.N.Y. 2013); *Jones v. Astrue*, 2012 WL 1605566, *5 (N.D.N.Y.) ("the Second Circuit has held that 'the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him") (quoting *Diaz v. Shalala*, 59 F.3d 307, 313-14 (2d Cir. 1995)), *report and recommendation adopted*, 2012 WL 1605593 (N.D.N.Y. 2012); *Allen v. Astrue*, 2008 WL 660510, *8 (N.D.N.Y. 2008) (although not

an acceptable medical source, "[a]s plaintiff's longtime treating psychotherapist and the only

treating source who evaluated the disabling effects of plaintiff's mental impairments, [plaintiff's

therapist's] opinion was relevant to the ALJ's disability determination . . . [t]hus, the ALJ should

have articulated why he discredited [the therapist's] reports").

In her decision, the ALJ explained that she discounted Robinson's opinion

because it was "not consistent with the GAF of 58 provided in that report, which is not indicative

of severe symptoms or problems with functioning." (Tr. 27-28). Gonzalez maintains that the

ALJ's analysis improperly ignores the evaluative factors outlined above and, in any event,

improperly relies upon the GAF score alone. (Docket # 9-1 at 18-22). I agree.[8]

"The GAF is a scale promulgated by the American Psychiatric Association

[("APA")] to assist in tracking the clinical progress of individuals [with psychological problems]

in global terms."[9]  *Kohler v. Astrue*, 546 F.3d 260, 262 n.1 (2d Cir. 2008) (internal quotations

omitted); *see also Petrie v. Astrue*, 412 F. App'x 401, 406 n.2 (2d Cir. 2011) ("GAF is a scale

that indicates the clinician's overall opinion of an individual's psychological, social and

---

[8]   The government contends that in addition to the GAF score, the ALJ also discounted Robinson's opinion because it "was inconsistent with the fact that she stated [Gonzalez] could take public transportation." (Docket # 102 at 23). To the extent the government's argument is even comprehensible, it is not supported by my review of the ALJ's decision. Although the ALJ correctly noted that Robinson had concluded that Gonzalez was able to use public transportation (Tr. 27), nothing in the decision suggests that the ALJ discounted the limitations assessed by Robinson on the basis of her observation that Gonzalez could take public transportation.

[9]   The GAF scale was removed from the APA's Diagnostic and Statistical Manual of Mental Disorders for the fifth edition published in 2013. *See Corporan v. Comm'r of Soc. Sec.*, 2015 WL 321832, *12 n.9 (S.D.N.Y. 2015). Gonzalez correctly notes that the Social Security Administration ("SSA") issued guidance, which was effective July 22, 2013, before the ALJ rendered her decision in this case, for all state and federal adjudicators concerning how to evaluate GAF ratings in assessing disability claims involving mental disorders. (Docket # 9-1 at 18-19) (citing AM-13066). Gonzalez argues that the July 2013 guidance cautions ALJs "against reliance on GAF scores," and, indeed, some courts have interpreted the guidance as "limiting the use of GAF scores" in SSI/DIB cases, while recognizing that the guidance instructs ALJs to continue to treat GAF scores as opinion evidence. *See Tilles v. Comm'r of Soc. Sec.*, 2015 WL 1454919, *33 (S.D.N.Y. 2015) ("the SSA issued an Administrative Message limiting the use of GAF scores[;] . . . the guidance instructs ALJs to treat GAF scores as opinion evidence"); *Gonzalez v. Colvin*, 2015 WL 1514972, *18 (S.D.N.Y. 2015) (same). As discussed below, irrespective of whether AM-13066 further limits the ALJ's consideration of GAF scores, I conclude that the ALJ's sole reliance on the GAF score as a basis to discount Robinson's opinion warrants remand, even under pre-guidance authority. On October 14, 2014, the Social Security Administration revised AM-13066. *See Mitchell v. Colvin*, 2015 WL 5306208, *12 (S.D.N.Y. 2015) (citing AM-13066 REV).

occupational functioning").  GAF scores may be relevant to an ALJ's severity and RFC

determinations, although they are "intended to be used to make treatment decisions . . . and not

disability determinations."  *Henry v. Colvin*, 2014 WL 652945, *4 (W.D.N.Y. 2014) (internal

quotations and citations omitted).  In evaluating opinion evidence, an ALJ may properly

consider, among other information, whether a treating source's opinion is consistent with the

GAF scores assessed by that treating source.  *See Zokaitis v. Astrue*, 2010 WL 5140576, *15-16

(D. Vt.) (ALJ did not err when discounting treatment source opinions where the ALJ concluded

that "the limitations embodied in each of those assessments are not consistent with and are out of

proportion to the objective findings of progress documented in each source's treatment progress

notes"), *report and recommendation adopted*, 2010 WL 5140063 (D. Vt. 2010), *aff'd*, 465

F. App'x 17, 19 (2d Cir. 2012) (ALJ properly discounted treating source opinion based on

factors set forth in 20 C.F.R. § 416.927 where it was inconsistent with the GAF score that the

treating source consistently assigned to plaintiff); *Price v. Comm'r of Soc. Sec. Admin.*, 342

F. App'x 172, 177 (6th Cir. 2009) ("[treating source] consistently estimated [plaintiff's] [GAF]

score to be in the mid-50's indicating only 'moderate' symptoms[;] [o]n this record, we find no

error in the ALJ's conclusion that [the treating source's] assessment that [plaintiff's]

impairments were debilitating was inconsistent with his treatment notes and prior assessments");

*Wasiewicz v. Colvin*, 2014 WL 5465451, *3 (W.D.N.Y. 2014) (noting that treating source's

opinion was inconsistent with the progress described in his treatment notes and "with the fact

that, throughout his treatment of [p]laintiff, he assessed her with [GAF] scores ranging from 56

to 65"); *Navedo v. Colvin*, 2014 WL 6983358, *2 (D. Mass. 2014) ("[t]he ALJ also found that

the [GAF] score . . . was inconsistent with the 'extreme' limitations set forth therein and

determined that it was not only internally inconsistent but was also inconsistent with the record

evidence"); *Blasco v. Comm'r of Soc. Sec.*, 2014 WL 3778997, *5 (N.D.N.Y. 2014) ("[t]he ALJ

explained that he discounted this opinion because it was inconsistent with [plaintiff's] treatment

records, the nature of the [doctor's] treatment relationship with [plaintiff] was unclear, and the

opinion rated [plaintiff's] current GAF as sixty-five, indicating only mild symptoms"); *Hill v.

Astrue*, 2013 WL 209647, *3 (W.D.N.Y. 2013) (treating source's opinion that plaintiff was

unable or limited in his ability to perform activities associated with unskilled work was

"inconsistent with the [treating source's] reported GAF score of 70" and his treatment notes

reflecting stable mood and increased functioning); *Thomas v. Astrue*, 2010 WL 1388997, *13

(S.D.N.Y. 2010) (ALJ properly concluded that treating source's opinions were "inconsistent with

the overall evidence[,] including her own reports[;] . . . [the GAF scores assigned by the treating

source] are inconsistent with [the treating source's] opinion that [plaintiff] is severely limited in

her functional capacity and thus cannot work").

       Although the ALJ was permitted to consider whether Robinson had assessed

limitations that were inconsistent with the GAF score, the ALJ was not permitted to discount

Robinson's assessment *solely* on the basis of that alleged inconsistency.  *See Hall v. Colvin*, 18

F. Supp. 3d 144, 153 (D.R.I. 2014) ("[t]he ALJ's reliance on GAF scores to discredit or find

credible certain medical evidence was error"); *Price v. Colvin*, 2014 WL 1246762, *7 (D. Kan.

2014) (ALJ improperly discounted treating source opinion on the grounds that the limitations

identified were inconsistent with the GAF score assessed by that treating source; "standing alone,

a GAF score, which can reflect social and/or occupational functioning, does not necessarily

evidence whether an impairment seriously interferes with a claimant's ability to work[;]

[b]ecause a GAF score may not relate to a claimant's ability to work, the score, standing alone,

without further explanation, does not establish whether or not plaintiff's impairment severely

interferes with an ability to perform basic work activities") (internal citation omitted); *Carton v. Colvin*, 2014 WL 108597, *14-15 (D. Conn. 2014) (ALJ improperly discounted treating source opinion on the grounds that "the finding of such extreme difficulties is patently inconsistent with [the doctor's] own assessment of a GAF of 55"; "the ALJ erred in relying on the GAF score as an indicat[ion] of the severity of the plaintiff's mental impairment") (internal quotation omitted); *Restuccia v. Colvin*, 2014 WL 4739318, *8-9 (S.D.N.Y. 2014) (ALJ improperly "concluded that [the treating psychiatrist's] opinion was inconsistent with the psychiatrist's own assessment of the claimant's GAF score showing only mild limitations[;] . . . [t]he ALJ did not have a sufficient basis for not according controlling weight to [the psychiatrist's] opinion"); *Daniel v. Astrue*, 2012 WL 3537019, *10 (E.D.N.Y. 2012) (ALJ failed to provide good reasons for giving no weight to treating source opinions; "[the doctor's] GAF score . . . , while relevant, does not contradict his ultimate finding that [plaintiff] was disabled and unable to work because a GAF score does not have a direct correlation to the severity requirements in the [SSA's] disorder listings") (internal quotations omitted); *Smith v. Astrue*, 565 F. Supp. 2d 918, 925 (M.D. Tenn. 2008) ("the GAF score, alone, cannot discredit [the doctor's] assessment of [p]laintiff's limitations . . . [and] the ALJ's reference to supposed 'inconsistencies' is therefore insufficient to provide 'good reasons' for his assignment of 'little weight' to the opinions of . . . a treating source").  Rather, the ALJ was required to evaluate Robinson's opinion in light of the factors identified above and in the context of the record as a whole.  *See Walterich v. Astrue*, 578 F. Supp. 2d 482, 515 (W.D.N.Y. 2008) (ALJ improperly discounted treating physician opinion because the limitations assessed were inconsistent with the rated GAF score; "[t]he ALJ, however, is not permitted to rely on any test score alone[;] . . . [n]o single piece of information taken in isolation can establish whether [a claimant is disabled]") (internal quotations omitted).

14

At the very least, because the apparently inconsistent GAF score was the sole basis provided for discounting Robinson's opinion, the ALJ should have re-contacted Robinson to obtain an explanation for the apparent inconsistency. *See id.* at 517 ("insofar as the ALJ found [the doctor's] assessment of [p]laintiff's GAF at 55 as inconsistent with [the doctor's] opinion regarding [p]laintiff's inability to work, . . . the ALJ was obligated to re-contact [the doctor] to obtain an explanation for the apparent inconsistency"); *cf. Ayers v. Astrue*, 2009 WL 4571840, *2 (W.D.N.Y. 2009) ("where, as here, the particular treating physician's opinion that is at issue is unsupported by any medical evidence and where the medical record is otherwise complete, there is no duty to recontact the treating physician for clarification").

The ALJ's failure to articulate good reasons for discounting Robinson's opinion constituted legal error, and remand is appropriate for the ALJ to determine the weight, if any, to accord Robinson's opinion based upon the relevant factors and the record as a whole. Although the ALJ may conclude that Robinson's opinion is still entitled to "little weight," she must nonetheless provide good reasons supported by substantial evidence for her determination.

As noted above, the administrative record did not contain any of Robinson's treatment notes. On remand, the ALJ should consider obtaining Robinson's treatment notes and, if successful, evaluate those records along with the other record evidence in determining Gonzalez's claim, including the proper weight to accord Robinson's opinion. Because reevaluation of the weight to be assigned to Robinson's opinion could affect the ALJ's RFC assessment and the rest of the sequential evaluation process, I do not reach Gonzalez's contention that the ALJ's credibility analysis was flawed. *Norman v. Astrue*, 912 F. Supp. 2d 33, 86 (S.D.N.Y. 2012) ("[b]ecause I find legal error requiring remand, I do not reach the issue of whether the ALJ's decision was supported by substantial evidence").

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings (**Docket # 10**) is **DENIED**, and Gonzalez's motion for judgment on the pleadings (**Docket # 9**) is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

_____
*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
      July 27, 2016